UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:21-CV-00115-FDW-DCK

| WE CBD, LLC, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | ORDER |
| THE UNITED STATES OF AMERICA *et al.*, | ) |  |
| Defendants. | ) |  |

THIS MATTER is before the Court on Defendants' Motion to Dismiss for Lack of Jurisdiction, (Doc. No. 14), filed on July 15, 2021. The Motion has been fully briefed and is ripe for review. For the reasons set forth below, the Court GRANTS Defendants' Motion.

## I. BACKGROUND

The facts relevant to the jurisdictional issues the Court addresses today are undisputed and relatively straightforward. In short, on or around November 8, 2020, Plaintiff shipped, by charter flight, 3,328.05 pounds of what it asserts was "legal, industrial hemp belonging to [Plaintiff]" (the "**Cargo**") from Oregon to Charlotte, North Carolina. (Doc. No. 13, p. 5). "The ultimate destination for the [Cargo] was a purchaser in Zurich, Switzerland." Id. The day prior to flight, however, Plaintiff submitted a General Declaration affirmatively representing the flight would have no cargo. (Doc. No. 14-1, p. 2). During a border search in Charlotte, the Cargo tested positive for THC. Id. Defendants assert CBP then detained the Cargo for further testing, id.; Plaintiff, in contrast, asserts that CBP detained the Cargo "solely for the purpose of forfeiture," (Doc. No. 13, p. 6). Thereafter, according to Defendants:

1

> Samples were sent to CBP's laboratory, where eight out of the nine samples tested over the legal limit of 0.3% delta-9 THC. Pursuant to its statutory authority to do so, CBP forfeited and destroyed the 2,779.83 pounds that tested as marijuana (the "**Marijuana**"). Despite Plaintiff's export violations making the remaining 548.22 pounds of the cargo that tested as hemp (the "**Hemp**") subject to forfeiture, CBP offered to return it upon the signing of a hold-harmless agreement.
>
> In response, Plaintiff filed the instant suit. The USAO provided Plaintiff with supporting information/documents and made essentially the same [] return offer again. Having received no response, the Government filed its forfeiture action against the Hemp and moved to dismiss here. Plaintiff then filed its Amended Complaint.

(Doc. No. 14-1, p. 3).

Seemingly ignoring its export violations, Plaintiff alleges in its Amended Complaint that the Cargo was legal hemp and was, therefore, categorically lawful to export to Switzerland. (Doc. No. 13, p. 1). Plaintiff contends that CBP failed to follow its own procedures; promised it would, but did not, provide Plaintiff with a "Notice of Seizure" before destroying any cargo; negligently failed to allow Plaintiff to independently test samples of the cargo or provide adequate information about CBP's testing procedures; wrongly destroyed the Marijuana; and wrongly fails to return the Hemp. Id. at pp. 3-2. Based on its contentions, Plaintiff brings six causes of action under a variety of tort and constitutional theories. Id. On July 15, 2021, Defendants filed the pending Motion to Dismiss for Lack of Jurisdiction, (Doc. No. 14).

## II. STANDARD OF REVIEW

"A motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) 'addresses whether [a plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of his claim.'" Starr Indem. & Liab. Co. v. United States, No. CCB-18-3326, 2019 WL 4305529, at *3 (D. Md. Sept. 11, 2019) (quoting Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452 (4th Cir. 2012)). "Sovereign immunity is jurisdictional in nature because, absent a waiver, sovereign immunity shields the

2

federal government from suit." NFF, LLC v. United States, No. CV-12-01091-PHX-PGR, 2013 WL 693430, at *2 (D. Ariz. Feb. 26, 2013) (citing FDIC v. Meyer, 510 U.S. 471, 475 (1994)). Therefore, the Court must first decide whether Defendants' immunity has been waived. Meyer, 510 U.S. at 475.

The plaintiff bears the burden of showing that the government has waived sovereign immunity at the motion to dismiss stage. Robinson v. U.S. Dep't of Educ., 917 F.3d 799, 802 (4th Cir. 2019) (citations omitted); see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) ("The plaintiff has the burden of proving that subject matter jurisdiction exists."). When a defendant challenges subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue[] and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, 945 F.2d at 768. The district court should grant the Rule 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.; see also Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

### III. ANALYSIS

#### a. Tort Claims

Defendants first assert the Court lacks subject matter jurisdiction over Plaintiff's tort claims because the claims are jurisdictionally barred under the Federal Tort Claims Act's (the "**FTCA**")[1] detention of goods exception, codified at 28 U.S.C. § 2680(c).[2] (Doc. No. 14-1, pp. 4-14). Plaintiff

---

[1] See 28 U.S.C. § 1346(b)

[2] Defendants also assert Plaintiff's tort claims must be dismissed for failure to comply with the administrative claim process. (Doc. No. 14-1, pp. 15-16). "Before a plaintiff may bring an FTCA action in federal court, he must first administratively present his tort claim to the appropriate agency for determination and have the claim finally denied by the agency in writing." See Zander v. U.S., No. 1:12CV700, 2016 WL 1312029, at *4 (M.D.N.C. Mar. 31, 2016), aff'd, 671 Fed. App'x. 80 (4th Cir. 2016) (citing 28 U.S.C. § 2675(a)). The Court need not analyze whether Plaintiff has properly presented its tort claim to the CBP, and therefore complied with the administrative claim

3

disputes Defendants' assertion and instead contends its claims are subject to the FTCA's waiver of sovereign immunity and are not subject to the FTCA's exceptions. (Doc. No. 17, pp. 3-14). In the alternative, Plaintiff asserts its tort claims fall within the Civil Asset Forfeiture Reform Act's ("**CAFRA**") "exception to the exception." (Doc. No. 17, pp. 13-14).

### i. The Detention of Goods Exception

It is well settled that under the doctrine of sovereign immunity, the United States can be sued only to the extent it has consented or waived its immunity to suit, and "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." See Lehman v. Nakshian, 453 U.S. 156, 160 (1981) (citations and internal quotations omitted). The FTCA sets forth certain circumstances under which the federal government has waived its immunity and provides generally that the United States shall be liable to the same extent as a private party, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." Kosak v. U.S., 465 U.S. 848, 851-52 (1984) (quoting 28 U.S.C. § 1346(b)). The Act's broad waiver of sovereign immunity is, however, subject to several exceptions. See 28 U.S.C. § 2680(a) – (n). Relevant here is § 2680(c), which exempts from the coverage of the FTCA "[a]ny claim arising in respect of… the detention of any goods, merchandise, or other property by any officer of customs…." 28 U.S.C. § 2680(c). Notably, the Supreme Court has explained that "the crucial portion of the provision[,] 'any claim arising in respect of' the detention of goods[,] means any claim 'arising out of' the detention of goods, and includes a claim resulting from negligent handling or storage of detained property. Kosak, 465 U.S. at 854.

In the instant matter, Plaintiff first argues its tort claims are not barred by the FTCA's

---

process, because Plaintiff's tort claims are otherwise barred by the detention of goods exception as set forth herein.

4

detention of goods because its "tort claims are based on intervening torts – not detention." (Doc. No. 17, p. 4). To support this fanciful contention, Plaintiff alleges several "intervening acts of negligence." (Doc. No. 17, p. 4). Specifically, Plaintiff asserts:

> The government failed to follow its own due process procedures; misrepresented that it would provide notice and communicate before destroying the hemp; destroyed legal hemp after failing to comply with its own rules, the Constitution, and its own commitments to Plaintiff (the intervening act is this non-compliance with law, not the mere destruction); wrongfully declined to allow Plaintiff to independently test the [Marijuana], even to this day; did not follow reliable testing procedures (after being put on notice by Plaintiff that Plaintiff's records showed the hemp tested as not contraband – again, the intervening act is failure to follow due process, not merely the flawed testing procedures); and did not provide Plaintiff with adequate information about its testing procedures.

(Doc. No. 17, p. 4). Plaintiff then relies heavily on Cervantes v. United States, 330 F.3d 1186 (9th Cir. 2003), asserting Cervantes "aptly summarizes why the detention exception does not apply when claims arise from intervening negligent acts." Id. at 5.

Plaintiff's reliance on Cervantes is sorely misplaced. Despite Plaintiff's assertions otherwise, the Court finds Cervantes inapplicable here, because Plaintiff's claims directly relate to, and arise from, the Cargo's detention. (Doc. No. 18, pp. 3-4). The District of Arizona has eloquently summarized the factual background and holding of Cervantes as follows:

> *Cervantes* involved a FTCA negligence claim by a plaintiff who, after purchasing a previously-seized car at a government auction that had marijuana hiding in its bumpers at the time of the auction, was arrested and incarcerated after the marijuana was subsequently found during a customs inspection. The Ninth Circuit held that the "detention of goods" exception did not bar the plaintiff's FTCA claim because the government's alleged negligence arose not from the initial detention of the car but rather from the government's independent and subsequent decision to sell the car at auction without first inspecting it, which the Ninth Circuit reasoned was "an independent and intervening event from the detention itself."

NFF, 2013 WL 693430, at *2 (citing Cervantes, 330 F.3d 1186). Furthermore, the Ninth Circuit, in Cervantes, explained, "Cervantes's claim does not 'arise[e] in respect of… the detention' of the vehicle because *the alleged negligence had nothing at all to do with the car's detention*, but only

5

its subsequent sale." Cervantes, 330 F.3d at 1189 (emphasis added). Completely distinguishable from the facts of Cervantes, are the facts before the Court in the present matter. Unlike in Cervantes, here, it is undisputed that Plaintiff had knowledge and control of the Cargo, including with respect to its transportation, at all relevant times leading up to the detention. (Doc. No. 14-1, pp. 2-3). Indeed, Plaintiff does not dispute that it "loaded an aircraft full of cargo for a flight from Oregon to Charlotte to Switzerland, for which Plaintiff had submitted a General Declaration the previous day affirmatively representing the flight would have no cargo." Id. at 2. The "intervening acts of negligence" Plaintiff asserts are certainly not independent or unrelated to the property's detention. Instead, all the "intervening acts" Plaintiff lists are directly related to and inextricably linked to the detention. Accordingly, it is clear to the Court that Plaintiff is challenging the propriety of the detention of the Cargo, unquestionably bringing Plaintiff's claims "within the entire universe of claims arising out of the detention of the [property], and thus within the purview of the FTCA exception." NFF, 2013 WL 693430, at *3 (citation and internal quotations omitted). Plaintiff's tort claims, including those asserting negligence arising from the detainment of the Cargo, are therefore barred under the detention of goods exception. See 28 U.S.C. § 2680(c). See NFF, 2013 WL 693430, at *3 ("The pre-seizure testing of samples of the plaintiffs' poppies, even if negligent, does not constitute an intervening act independent of the detention itself; the plaintiffs' damages arise from the detention and subsequent destruction of the poppies, and the pre-seizure testing was an integral part of the detention process.").

    ii. **CAFRA's "Exception to the Exception"**

Plaintiff next asserts, in conclusory fashion, that "[e]ven if the Court disagrees that the claims arise from intervening acts, the government is subject to liability under [CAFRA] because it seized [Plaintiff's] property solely for purposes of forfeiture." (Doc. No. 17, p. 3). "In 2000,

6

Congress passed [CAFRA], which amended § 2680(c) and created an 'exception to the exception.'" Starr, 2019 WL 4305529, at *3 (citing Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 221, 239 (2008)). This re-waiver, however, applies only if the plaintiff can satisfy four statutory conditions: "(1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense; (2) the interest of the claimant was not forfeited; (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under Federal criminal forfeiture law." 28 U.S.C. § 2680(c)(1)-(4). Pursuant to § 2680(c)(1) then, "the government is *not* immune from suits arising from the detention of property by law enforcement 'if the property was seized for the purpose of forfeiture.'" Starr, 2019 WL 4305529, at *3) (quoting 18 U.S.C. § 2680(c)(1); Ali, 552 U.S. at 221) (emphasis in original). Accordingly, "the [C]ourt lacks subject matter jurisdiction in this case unless [Plaintiff] can establish that forfeiture was the government's sole reason for seizure." Id. at *4. [3]

Here, Plaintiff fails at the first prong. In response to Plaintiff's conclusory allegations that its property was seized solely for the purpose of forfeiture, Defendants correctly explain that "[a]n obvious alternate explanation exists: when [Defendants] caught Plaintiff smuggling 93 bags of

---

[3] The Court notes, construing the waiver of sovereign immunity strictly in favor of the sovereign, numerous other circuit and district courts have narrowly interpreted the re-waiver provision to apply only to claims arising from detention of property seized for the *sole* purpose of forfeiture. See Foster v. U.S., 522 F.3d 1071, 1075 (9th Cir. 2008) ("We hold that, under CAFRA, the re-waiver of sovereign immunity in § 2680(c)(1)-(4) applies only to property seized for the sole purpose of forfeiture. Consequently, the fact that the government may have had the possibility of a forfeiture in mind when it seized Plaintiffs' property does not detract from the application of the detention of goods exception when criminal investigation was a legitimate purpose of the initial seizure."); see also Starr, 2018 WL 4305529, at *4 ("This court is persuaded by the Ninth Circuit's reasoning in Foster and finds that the re-waiver provision applies only to claims arising from detention of property seized for the sole purpose of forfeiture).[3] Although the Fourth Circuit has not yet interpreted CAFRA's "exception to the exception," the Court finds persuasive the reasoning articulated in Foster, along with the vast number of courts who have applied Foster, and similarly finds the re-waiver provision applies only to claims arising from detention of property seized for the sole purpose of forfeiture.

7

what looked like marijuana and field-tested positive for THC, CBP detained the cargo for further testing—an investigate purpose to determine, *inter alia*, if the cargo was contraband." (Doc. No. 14-1, p. 14). Without acknowledging the alternative explanation proffered by Defendants, Plaintiff relies heavily on (1) CBP's March 5, 2021, determination letter, (Doc. No. 13-4), which cites to two statutory provisions that include the word "forfeited" in their text[4], and (2) the fact that the Marijuana "*ultimately was 'forfeited.'*" (Doc. No. 17, p. 13). In addition, Plaintiff's Amended Complaint states, "Plaintiff knows that the Hemp was seized solely for the purpose of forfeiture because the Hemp had already undergone testing at the time the seizure was processed on December 15, 2020." (Doc. No. 13, p. 6).

Plaintiff's erroneous reliance on the March 5, 2021, determination letter and the fact that the Marijuana was ultimately forfeited demonstrates Plaintiff's misunderstanding of the relevant analysis under 28 U.S.C. § 2680(c)(1). As set forth above, the critical question is not whether the property was ultimately forfeited, but whether the property, at the time of seizure, was seized solely for the purpose of forfeiture. 28 U.S.C. § 2680(c)(1). It does not follow, then, that an ultimate forfeiture demands a finding that property was seized solely for the purpose of forfeiture.

Based on the record, the Court is unconvinced that Plaintiff's property was seized solely for the purpose of forfeiture. Instead, it seems indisputable – and indeed, Plaintiff failed to even acknowledge – that the CBP detained Plaintiff's property for THC contest testing. Accordingly, this case is akin to <u>Smoke Shop, LLC v. U.S.</u>, 761 F. 3d 779 (7th Cir. 2014), wherein the Seventh Circuit held:

---

[4] Plaintiff's response brief reads, "CBP's March 5, 2021 determination letter… cites to 19 U.S.C. § 1595a(d) as a justification for the seizure of both the 2,779.83 and 548.22 pounds of merchandise. That statute states that merchandise exported contrary to law 'shall be seized and forfeited to the United States.' § 1595a(d). The determination letter also cites 21 U.S.C. § 881(f), which states 'products shall be deemed contraband and seized and summarily forfeited to the United States." (Doc. No. 17, pp. 13-14). "as a practical matter, '[w]hen the government seizes property for law enforcement purposes… forfeiture often follows eventually.'" <u>Starr</u>, 2019 WL 4305529, at *3 (quoting <u>Foster</u>, 522 F.3d at 1079).

> Smoke Shop's assertion that '[t]he defendants seized the property for the purpose of forfeiture' is the type of legal conclusion not entitled to [a] presumption of truth…. When examined in context, the facts alleged in Smoke Shop's complaint give rise to an obvious alternative explanation: that the DEA seized Smoke Shop's inventory in connection with its investigation of a possible crime…. All along, the DEA maintained that it was testing the products to see if they contained an illegal substance under federal drug laws…. This situation therefore falls outside the scope of CAFRA's re-waiver provision—and within the scope of the detained-goods exception—and the district court was right to dismiss Smoke Shop's FTCA suit on this ground.

Id. at 785-86.

Based on the foregoing, the Court finds Plaintiff has failed to meet its burden of establishing CAFRA'S "exception to the exception" is applicable here, and as set forth above, Plaintiff's claims are barred by § 2680(c). Accordingly, the Court GRANTS Defendants' Motion to Dismiss to the extent it seeks dismissal of Plaintiff's tort claims.

### b. Constitutional Claims

#### i. Sovereign Immunity

As explained above, under the doctrine of sovereign immunity, the United States can be sued only to the extent it has consented, or waived its immunity, to suit. See Lehman v. Nakshian, 453 U.S. 156, 160 (1981). In its Amended Complaint, Plaintiff asserts "Defendants have waived sovereign immunity as to Plaintiff's constitutional claim for deprivation of rights pursuant to 42 U.S.C. § 1983." (Doc. No. 13, p.3). It is well established, however, that the federal government and its officials are not subject to suit under Section 1983. See Locke v. U.S., No. SA CV 20-01502-DOC-(ADSx), 2021 WL 1255195 (C.D. Cali. Feb. 19, 2021) (citations and internal quotations omitted) ("By the very language of the statute, Section 1983 provides a cause of action against persons acting under color of State law, which precludes liability for a federal government actor"); Bartell v. U.S. E.E.O.C., 2002 WL 31958717, at *4 (W.D.N.C. Mar. 29, 2002) (Finding a claim against the EEOC in its capacity as a federal enforcement agency should be dismissed

9

pursuant to Rule 12(b)(1)).  Accordingly, Plaintiff erroneously attempts to sue the federal government for claims under Section 1983 in this action, and the Court must also dismiss Plaintiff's "constitutional claims" for lack of jurisdiction to the extent they rely on Section 1983.[5]

The Court also acknowledges that Plaintiff, in its response brief, cites to the Administrative Procedure Act (the "**APA**"), 5 U.S.C. § 702, and appears to allege – for the first time – that its constitutional claims are not barred by sovereign immunity because they seek only prospective relief.  (Doc. No. 17, pp. 16-17).  The Court finds such assertion untimely and meritless.  "It is well-established that parties cannot amend their complaints through briefing." Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013); see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion.").  Plaintiff's Amended Complaint is completely devoid of any reference to the APA and asserts only that "Defendants have waived sovereign immunity as to Plaintiff's constitutional claims for deprivation of rights pursuant to 42 U.S.C. § 1983."  (Doc. No. 13, p. 3).  For that reason alone, Plaintiff has failed to satisfy its burden of showing Defendants have waived sovereign immunity pursuant to § 702 of the APA.[6]

Nonetheless, the Court, on February 7, 2022, allowed each of the parties to file supplemental briefs regarding the Government's alleged waiver of immunity with respect to Plaintiff's constitutional claims.  See (Doc. No. 21).  Relying solely on § 702 of the APA, Plaintiff,

---

[5] Plaintiff, in a conspicuous footnote, further asserts, "[t]o the extent that the Court believes that Plaintiff must name the responsible individual CBP agents as additional Defendants for the Constitutional claims to survive, Plaintiff requests leave to amend the Complaint for the sole purpose of doing so." (Doc. No. 17, p. 16).  As individual CBP agents are officials of a federal agency, Plaintiff's request to again amend its Complaint would not remedy its deficiency.  Accordingly, the Court DENIES Plaintiff's request.

[6] The Court recognizes Plaintiff's request for leave to amend its Amended Complaint "solely to add § 702 as a basis for jurisdiction or waiver of sovereign immunity."  (Doc. No. 22, p. 5).  After carefully considering the record, including Plaintiff's Supplemental Brief, (Doc. No. 22), and for the reasons set forth below, the leave Plaintiff seeks would not remedy the deficiencies of its Amended Complaint.  Accordingly, the Court DENIES Plaintiff's request.

10

in its Supplemental Brief, attempts to support its assertion that this Court can exercise jurisdiction over Plaintiff's constitutional claims. (Doc. No. 22). As Plaintiff explains, § 702 states, in relevant part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

(Doc. No. 22, p. 1) (citing 5 U.S.C. § 702). The waiver set forth in § 702 is, however, subject to three exceptions, including "when (1) the action also seeks monetary relief; (2) there is an adequate remedy at law; or (3) the action is precluded from judicial review by statute or committed by law to agency discretion." See United States v. Morales, No. 02 Civ. 10326 (JFK), 2003 WL 21692752, at *4 (S.D.N.Y July 21, 2003) (quoting Polanco v. U.S. Drug Enf't Admin., 158 F.3d 647, 649 (2d Cir. 1998)); see also Bowen v. Massachusetts, 487 U.S. 879, 891 (1988). In an attempt to mold its constitutional claims to permissibly fall under the APA's waiver, Plaintiff asserts it seeks only "prospective injunctive relief," (Doc. No. 22, p. 5), through its constitutional claims, including: (1) "declaratory and injunctive relief to determine that the government should allow Plaintiff to test the [Marijuana], as well as other prospective relief based on its deprivation of due process under the Fifth Amendment"; (2) "a ruling that Defendants' failure to provide notice and comply with its agreements with respect to disposition of the [Marijuana] was unlawful"; and (3) "a declaration that the [] Hemp should be returned." (Doc. No. 17, p. 17).

The APA "cannot be used by creative plaintiffs as a way of gaining back-door access to monetary damages that are otherwise unavailable due to sovereign immunity." DME Constr. Assocs., Inc. v. United States, No. 15CV4322ADSSIL, 2016 WL 2992131, at *4 (E.D.N.Y. May

11

23, 2016); see also Id. at *5 (citing B.K. Instruments, Inc. v. United States, 715 F.2d 713, 727 (2d Cir. 1983) ("The courts have established firmly that where the prime objective of the plaintiff is to obtain money damages from the Government [the lack of federal district court jurisdiction, pursuant to the APA, may] not be avoided by framing a complaint to appear to seek only injunctive, mandatory or declaratory relief against government officials when the result would be the equivalent of obtaining money damage."). Despite Plaintiff's contentions otherwise, the Court agrees with Defendants that "Plaintiff's non-FTCA constitutional/equitable claims are merely components of its FTCA claim for monetary relief disguised as declaratory requests." (Doc. No. 23, p. 4). As such, the Court finds Plaintiff's constitutional claims amount to exactly the type of relief that the Supreme Court has held falls outside of § 702's waiver – substitute relief. See Dep't of Army v. Blue Fox, Inc., 525 U.S. 225, 263 (1999). Moreover, it is undisputed that the Marijuana has been destroyed. (Doc. No. 13, p. 7). Accordingly, with respect to the Marijuana, relief under the APA is impossible. See United States v. Morales, No. 02 Civ. 10326 (JFK), 2003 WL 21692752, at *4 (S.D.N.Y July 21, 2003) ("since the property Morales seeks has been destroyed, relief under the APA is impossible.").

Furthermore, with respect to the Hemp, which has not yet been destroyed, Plaintiff's argument also fails because an adequate remedy at law exists. See Bowen v. Massachusetts, 487 U.S. 879, 891 (1988). The Hemp is the subject of an *in rem* forfeiture proceeding currently pending in this Court. See United States of America v. Approximately 548.22 Pounds of Hemp Detained from We CBD, LLC on November 8, 2020, at Charlotte-Douglas International Airport; Civil Action No. 3:21-CV-267 (the "**Forfeiture Proceeding**"). Therefore, relief under the APA is unavailable. See LKQ Corp. v. United States Dep't of Homeland Sec., 369 F. Supp. 3d 577, 586 (D. Del. 2019) ("That Plaintiff[] may not prefer the venue or process by which the judicial

forfeiture proceedings would follow is of little moment to the Court…. A clear and adequate alternative judicial forum exists to determine whether [the Cargo] should be forfeited."); see also Turner v. Sec'y of U.S. Dep't of Hous. & Urb. Dev., 449 F.3d 536, 541 (3d Cir. 2006) (citing Town of Sanford v. United States, 140 F.3d 20, 23 (1st Cir. 1998); Martinez v. United States, 333 F.3d 1295, 1319-20) ("[a] legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given Plaintiff."). On March 23, 2022, Plaintiff filed a Stipulation to Withdraw its Verified Claim in the Forfeiture Proceeding. See Stipulation to Withdraw Verified Claim by We CBD, LLC, No. 3:21-cv-267, (Doc. No. 24). In so doing, Plaintiff voluntarily forfeited its adequate remedy at law. This relinquishment does not qualify as a reason by which a claim under the APA could be made successfully. See Morales, 2003 WL 21692752, at *4. Accordingly, Plaintiff has failed to establish Defendants have waived sovereign immunity, and the Court must GRANT Defendants' Motion to Dismiss.

### ii. Mootness

Even if Plaintiff had shown Defendants waived sovereign immunity under the APA, or otherwise, the Court does not have jurisdiction over Plaintiff's constitutional claims because they are moot. "Article III of the United States Constitution limits the jurisdiction of the federal courts to 'actual, ongoing controversies.'" Pressley Ridge Schools v. Shimer, 134 F.3d 1218, 1220 (4th Cir. 1998) (quoting Honig v. Doe, 484 U.S. 305, 317 (1988)). Issues of mootness, then, are properly the subject of a motion to dismiss for lack pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, as the doctrine constitutes "a part of the constitutional limits of federal court jurisdiction." Simmons v. United Morg. & Loan Inv., LLC, 634 F.3d 754, 763 (4th Cir. 2011) (internal quotations omitted); see also N.C. v. Rice, 404 U.S. 244, (1971) ("Mootness is a jurisdictional question."). A "case is moot when the issues presented are no longer 'live' or the

parties lack a legally cognizable interest in the outcome." Simmons, 634 F.3d at 763. "Thus, a federal court has no power to render advisory opinions or decide questions that cannot affect the rights of litigants in the case before them." Pressley Ridge Schools v. Shimer, 134 F.3d 1218, 1220 (4th Cir. 1998) (internal quotations and alterations omitted); see also Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 53-54 (1st Cir. 2013) (quoting Preiser V. Newkirk, 422 U.S. 395, 402 (1975)) ("For declaratory relief to withstand a mootness challenge, the facts alleged must 'show that there is a substantial controversy… *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.*'") (emphasis in original). In other words, "[t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit." Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 478 (1990)). "This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id. (quoting Lewis, 494 U.S. at 477).

Here, Plaintiff has failed to show that the controversy between the parties contains sufficient immediacy and reality, or that Plaintiff's alleged injury is likely to be redressed by a favorable judicial decision. As set forth above, Plaintiff seeks the following relief through its constitutional claims: (1) "declaratory and injunctive relief to determine that the government should allow Plaintiff to test the [Marijuana], as well as other prospective relief based on its deprivation of due process under the Fifth Amendment"; (2) "a ruling that Defendants' failure to provide notice and comply with its agreements with respect to disposition of the [Marijuana] was unlawful"; and (3) "a declaration that the [] Hemp should be returned." (Doc. No. 17, p. 17).

As to Plaintiff's first and second requests for relief, which relate to the Marijuana, Defendants argue, and the Court agrees, that Plaintiff "merely seeks an advisory opinion regarding

14

purported past wrongs." (Doc. No. 14-1, p. 17). It is undisputed that the Marijuana has already been destroyed and, as set forth above, even if its destruction were negligent, Plaintiff's tort claims would still be barred under § 2680(c). Therefore, with respect to the Marijuana, there exists no actual, ongoing controversy between the parties because the issues presented are no longer "live" and the parties lack a legally cognizable interest in the outcome. See Simmons, 634 F.3d at 763.

The Court recognizes, but disagrees with, Plaintiff's assertion that it should be allowed to test the Marijuana because such testing "is relevant to Plaintiff's claims in other related litigation in this Court[, WeCBD, LLC v. Planet Nine Private Air, LLC, 3:21-cv-352 (the "**Planet Nine Case**")]." (Doc. No. 17, p. 17). As a preliminary matter, the Court is unconvinced that the relief Plaintiff seeks is relevant to, or affects in any way, the Planet Nine case. As Defendants argue, "Plaintiff has conceded, *see* No. 3:21-cv-352, that export violations occurred – and thus the entire cargo was subject to forfeiture under Title 19…." (Doc. No. 18, p. 4). Moreover, Plaintiff fails to cite to any case law supporting its proposition that an otherwise moot issue may nonetheless manufacture jurisdiction because it may possibly assist a party with discovery in an independent matter, involving a different defendant and different claims. Thus, the Court fails to see how allowing Plaintiff to test the destroyed Marijuana would affect the rights of the litigants in *this* case before the Court. See Shimer, 134 F.3d at 1220 ("Thus, a federal court has no power to render advisory opinions or decide questions that cannot affect the rights of litigants in the case before them."); Princeton Univ. v. Schmid, 455 U.S. 100, 102 (1982) ("We do not sit to decide hypothetical issues or to give advisory opinions about issues at to which there are not adverse parties before us.").

Plaintiff also asserts, again without pointing to any case law, that it "seeks a ruling that Defendants' failure to provide notice and comply with its agreements with respect to disposition

15

of the [Marijuana] was unlawful, because Plaintiff is in the business of exporting hemp, and this issue will recur in the future."  (Doc. No. 17, p. 17).  To the extent Plaintiff is attempting to assert its constitutional claims fall within an exception to the mootness doctrine because it is "capable of repetition, yet evading review," Plaintiff is again mistaken.  See Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515 (1911).  That exception only applies when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again."  Weinstein v. Bradford, 423 U.S. 147, 149 (1975).  The Court fails to understand how the duration of Defendants allegedly unlawful actions here, failing to provide notice and comply with its agreements with respect to the destruction of the Marijuana, even if actionable, would be "too short to be fully litigated prior to its cessation or expiration."  Id.  Moreover, there is not a reasonable expectation that Plaintiff would be subjected to the same action again, as that would require Plaintiff to again violate the law by: (1) loading a plane with cargo that tests over the legal limit of .3% delta-9 THC, and (2) failing to declare cargo before attempting to export it.  Accordingly, the "capable of repetition, yet evading review" exception is inapplicable to Plaintiff's challenged action.  Id.  For the reasons stated, Plaintiff's constitutional claims related to the Marijuana are moot and must be dismissed.

Finally, with respect to the relief requested related to the Hemp, as set forth above, the Hemp is the subject of the Forfeiture Proceeding, which is currently pending in this Court.   It is well settled that a forfeiture "action in rem is not subject to collateral attack in any other court." 37 Assocs., Tr. for the 37 Forrester St., SW Tr. v. REO Const. Consultants, Inc., 409 F. Supp. 2d 10, 14 (D.D.C. 2006); see also United States v. Hernandez, 911 F.2d 981, 983 (5th Cir. 1990) ("the proper place to litigate the legality of [a] seizure [and forfeiture] is in the forfeiture proceeding.").

Here, Plaintiff appropriately began to litigate its claim for the return of the Hemp in the Forfeiture Proceeding, but, as discussed above, recently made the choice to withdraw its Verified Claim. See Stipulation to Withdraw Verified Claim by We CBD, LLC, No. 3:21-cv-267, (Doc. No. 24). Such decision does not impact established law specifying that claims such as those Plaintiff attempts to raise here are properly litigated in a pending *in rem* proceeding. See Rosevita Charter Const. Corp. v. United States, 787 F.Supp. 39, 43 (D.P.R. 1992) ("A number of circuit courts of appeals have decided that, where a judicial forfeiture proceeding is pending, the claimant must litigate the claim for the return of the seized property in the forfeiture action.").[7] As the proper venue for Plaintiff to seek return of the Hemp is the Forfeiture Proceeding, this Court also finds Plaintiff's constitutional claims related to the Hemp are moot; Plaintiff's alleged injuries will not be redressed by a favorable judicial decision in this case. See Kemna, 523 U.S. at 7. Accordingly, Plaintiff's constitutional claims must be dismissed, and Defendants' Motion to Dismiss should be GRANTED.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. No. 14) is GRANTED.

The Clerk of Court is respectfully directed to CLOSE THIS CASE.

IT IS SO ORDERED.

---

[7] Although Plaintiff asserts "this litigation precedes the Forfeiture Action, and therefore cannot be a collateral attack on the forfeiture proceedings," (Doc. No. 17, p. 17), it again fails to provide any support for this proposition. In any event, the Supreme Court has explained, "[b]y the settled doctrine of this court, whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States." United States v. Parcel of Land, Bldgs., Appurtenances & Improvements, Known as 92 Buena Vista Ave., Rumson, N.J., 507 U.S. 111, 126 (1993) (quoting United States v. Stowell, 133 U.S. 1, 16-17 (1890)).

17

Signed: March 31, 2022

Frank D. Whitney
United States District Judge

18